**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02120-JLK

COMPANIA DE INVERSIONES MERCANTILES S.A.,

    Judgment Creditor,

v.

GRUPO CEMENTOS DE CHIHUAHUA S.A.B. DE C.V., and
GCC LATINOAMERICA, S.A. DE C.V.,

    Judgment Debtors.

---

**MOTION OF GRUPO CEMENTOS DE CHIHUAHUA S.A.B. DE C.V., AND GCC LATINOAMERICA, S.A. DE C.V., FOR LEAVE TO FILE A SUR-REPLY TO CIMSA'S FIRST POST-JUDGMENT MOTION FOR TURNOVER ORDER**

---

## INTRODUCTION

Grupo Cementos de Chihuahua, S.A.B. de C.V. ("GCC") and GCC Latinoamérica, S.A. de C.V. ("GCC Latinoamérica," and together "Respondents") respectfully move for leave to submit a sur-reply brief on Petitioner Compañía de Inversiones Mercantiles S.A.'s ("CIMSA") First Post-Judgment Motion for Turnover Order Requiring Payment of Funds into Registry of Court (the "Turnover Motion"). CIMSA has stated that it does not consent to this motion, but the parties have agreed that if a sur-reply is permitted, the sur-reply would be filed no later than December 23, 2019.

A sur-reply is warranted here because CIMSA's reply brief in support of the Turnover Motion ("Reply") consists almost entirely of new arguments on issues it did not even attempt to address in the Turnover Motion itself. CIMSA does not dispute that Mexican law governs whether the property at issue here is exempt from execution, and CIMSA's Reply thus extensively discusses whether Mexican law exempts the property at issue here or whether there is otherwise a conflict with Mexican law. However, Respondents have had no opportunity to address CIMSA's arguments concerning the proper interpretation of Mexican law because the Turnover Motion did not mention Mexican law in any way. Moreover, CIMSA has produced a new declaration along with its Reply ("González de Castilla Decl.") that opines on numerous Mexican law issues, including the citation of Mexican authorities that have not been translated for this Court. Accordingly, GCC should have the opportunity for its own expert to respond to these new opinions and address these newly cited authorities.

In sum, given CIMSA's new arguments and new declaration—as well as the extraordinary and unprecedented relief requested in the Turnover Motion—Respondents should be permitted to file a sur-reply.

1

## ARGUMENT

This Court has discretion regarding whether to permit a sur-reply, and this Court consistently grants such permission where a reply contains new arguments. *See, e.g.*, *Chavez v. Liberty Acquisitions Servicing, LLC*, No. 14-CV-01973-JLK, 2015 WL 1577605, at *1 (D. Colo. Apr. 2, 2015) ("Defendant has also moved (Doc. 42) to file a sur-reply (Doc. 43) in opposition to Plaintiff's motion, and because I agree that Plaintiffs' reply makes new arguments, that motion is GRANTED …."); *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1128 (D. Colo. 2015) ("Plaintiffs sought and were granted leave to file a sur-reply responding to these additional arguments."); *Mize v. Kai, Inc.*, 2017 WL 5195203, No. 17-CV-00915-NYW at *2 (D. Colo. Nov. 9, 2017) ("Upon receipt of Defendant's Reply, the court permitted Ms. Mize to file a sur-reply to address the new issues raised by Defendant in its Reply …."). Here, the Reply is replete with new arguments. All but the last two pages of the argument section (*i.e.*, Parts I, II, and III) concern whether the assets are exempt from execution, the application of comity, and whether Mexican law precludes turnover of the property at issue. None of these issues were mentioned in any way in the Turnover Motion, and thus this is the paradigmatic case where a sur-reply is warranted.

*First*, CIMSA does not dispute (Reply at 2-3) that Mexican law applies in determining whether the property is exempt from execution, but CIMSA's Turnover Motion did not address Mexican law at all. Thus, CIMSA's Reply sets forth entirely new arguments and raises new issues as to Mexican law, as to which Respondents should have an opportunity to respond. In particular, CIMSA relies (Reply at 3) on Article 434 of the Mexican Federal Civil Procedural Code as defining exempt property, but as Respondents would show in a sur-reply, Article 434 does not set forth a complete list of exemptions but rather states that any law can create a basis for an exemption to execution, and several such laws are applicable here.

2

*Second*, CIMSA's responses as to whether comity precludes a turnover order and whether the proper interpretation of Mexican law establishes a conflict between the proposed turnover order and Mexican law are also entirely new. To begin with, CIMSA argues (Reply at 5-6) that courts should consider comity only when issuing sanctions but not when issuing orders, but CIMSA ignores that the principal case it relies on recognized comity as a basis to deny a turnover under Colorado Rule of Civil Procedure 69(g). *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1236 (10th Cir. 2000) ("Comity 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law.'" (quoting *United States v. First National City Bank*, 379 U.S. 378, 384 (1965))).[1] As to CIMSA's arguments that there is no conflict with Mexican law (Reply at 8-14) (asserting that the Mexican Injunction is no longer in effect, and that the proposed Turnover Order does not conflict with the Mexican Injunction or Mexican law concerning the enforcement of foreign judgments), these new arguments likewise merit the opportunity for a response from Respondents. As would be set forth more fully in a sur-reply, these arguments are erroneous because (*inter alia*):

- The Mexican Injunction is still in effect, and Respondents previously stated only that "CIMSA is free to request that it be lifted." Dkt. 78 at 2, 37, 40-41.

- The conflict with the Mexican Injunction arises not simply because CIMSA is bringing the claim here, but because it is seeking to enforce the judgment with property in Mexico, where Mexican law applies.

- This is an *in rem* action under Mexican law because, while CIMSA's expert asserts that an action is *in rem* only when it affects "real (property) rights" (González de

---

[1] The decades-old case CIMSA relies upon addressed only the "power to compel discovery," *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 341-42 (10th Cir. 1976), not whether comity should limit execution orders.

3

Castilla Decl. at 6), deprivation of possession of property affects real property rights under Mexican law.[2]

- CIMSA itself recognized the *in rem* nature of executing on assets in this litigation by claiming quasi *in rem* jurisdiction based on Respondents supposedly having assets in the United States.  Dkt. 73 at 22-28.

- CIMSA's expert cites nothing (González de Castilla Decl. at 5) for the proposition that Mexican law would not see a turnover order as an improper enforcement of a foreign judgment, and indeed, this theory is legally erroneous (and nonsensical given that this entire litigation concerns enforcement of a foreign judgment in Bolivia).

- CIMSA argues (Reply at 14) that treasury shares are attachable, but CIMSA's expert concedes (González de Castilla Decl. at 7-8) that treasury shares cannot be turned over or generally disposed of, and his theory that the right to receive payment for treasury shares can be indirectly turned over is legally unsupported and not the actual relief sought in the Turnover Motion.

*Third*, CIMSA makes various new attacks (Reply at 15-18) on the validity of the Mexican Injunction because it was supposedly procured in bad faith to block execution of this Court's judgment and the Mexican court supposedly lacked jurisdiction.  However, as Respondents would show more fully in the sur-reply, the attacks are meritless, as the Mexican Injunction pre-dated the proceedings here, and Respondents are raising it now only to prevent a turnover of property *in Mexico*, which CIMSA did not even mention as a possibility in this litigation until the Turnover Motion.  In addition, there is no basis for this Court to question the Chihuahua court's exercise of jurisdiction, which was more than reasonable and legally supported, as Respondents' Mexican law

---

[2] The cases CIMSA's expert cites (González de Castilla Decl. at 6 n.7) concern only preliminary attachment (in Mexico, called an "embargo") of an asset, which does not deprive a person of possession and only ensures that an asset cannot be sold pending a final decision.  The U.S. case CIMSA cites similarly concerns only preventing a transfer of property in Mexico, not requiring the property to be transferred to satisfy a United States judgment.  *See Diaz-Barba v. Kismet Acquisition, LLC*, No. 08-CV-1446-BTM (BLM), 2010 WL 2079738, at *12-13 (S.D. Cal. May 20, 2010).

expert would explain: GCC Latinoamérica is domiciled in Chihuahua and its assets are in Chihuahua and thus, it was entitled to seek protection of Chihuahuan courts.

*Finally*, CIMSA raises new arguments (Reply at 18-20) regarding the applicability of Fed. R. Civ. P. 69(a) and Colo. R. Civ. P. 69(g). In particular, CIMSA argues (Reply at 18-19) that the presumption of extraterritoriality is inapplicable because this Court is exercising *in personam* jurisdiction. However, Supreme Court precedent (issued after the Tenth Circuit decision in *United International Holdings*) makes clear that the presumption against extraterritoriality bars courts from applying statutes and rules outside the bounds of the United States, regardless of whether the court has *in personam* jurisdiction over the parties. *See, e.g.*, *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 261 (2010). CIMSA also argues (Reply at 19-20) that "[n]othing in Rule 69(a) or in federal jurisprudence" requires that a judgment debtor be amenable to jurisdiction in state court. But CIMSA ignores that Colorado Rule 69(g) *does* have such a limitation by its plain language. Once again, CIMSA did not address this issue in its Turnover Motion and Respondents should have the opportunity to respond in sur-reply.

## CONCLUSION

This Court should grant leave for Respondents to file a sur-reply regarding CIMSA's Motion for a Turnover Order.

Dated: December 9, 2019

Respectfully submitted,

/s/ David M. Cooper

Juan P. Morillo
Daniel Pulecio-Boek
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, DC 20005
202-538-8000

David M. Cooper
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
212-849-7000

*Counsel for Respondents*

5