# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02120-JLK

COMPAÑÍA DE INVERSIONES MERCANTILES S.A.,

   Petitioner-Judgment Creditor,

v.

GRUPO CEMENTOS DE CHIHUAHUA S.A.B. DE C.V., and
GCC LATINOAMÉRICA, S.A. DE C.V.,

   Respondents-Judgment Debtors.

## RESPONDENTS' RULE 60(B)(5) MOTION TO VACATE THE JUDGMENT

Daniel Pulecio-Boek
GREENBERG TRAURIG LLP
2101 L Street, N.W.
Suite 1000
Washington, DC 20037
202-331-3117

David M. Cooper
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
212-849-7000

Juan P. Morillo
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, DC 20005
202-538-8000

# TABLE OF CONTENTS

                                                                                                   **Page**

TABLE OF AUTHORITIES .................................................................................................... i
INTRODUCTION ................................................................................................................... 1
BACKGROUND ..................................................................................................................... 2
I.     BOLIVIAN PROCEEDINGS PRIOR TO THIS COURT'S ENTRY OF JUDGMENT .................................................................................................... 3
       A.     GCC's Challenges To The Merits Award ............................................... 3
       B.     GCC's Challenges To The Damages Award .......................................... 4
II.    THIS COURT'S CONFIRMATION OF THE ARBITRAL AWARD AND ENTRY OF JUDGMENT .................................................................................... 5
III.   BOLIVIAN PROCEEDINGS FOLLOWING THIS COURT'S ENTRY OF JUDGMENT .................................................................................................... 6
IV.   CIMSA'S CONDUCT FOLLOWING THE OCTOBER 2020 PCT ORDER .................... 7
ARGUMENT ........................................................................................................................... 8
I.     A BOLIVIAN COURT OF COMPETENT AUTHORITY HAS SET ASIDE THE ARBITRAL AWARD ........................................................................................ 8
II.    THIS COURT SHOULD VACATE ITS JUDGMENT, WHICH WAS PREDICATED ON AN ARBITRAL AWARD THAT IS NOW NULL AND VOID .................................................................................................................... 10
CONCLUSION ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne*,
   68 F.3d 547 (2d Cir. 1995) ................................................................................................ 12

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*,
   No. 10-CV-2516-WJM-KLM, 2017 WL 345664 (D. Colo. Jan. 24, 2017*)* ............................ 11

*Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*,
   191 F.3d 194 (2d Cir. 1999). ............................................................................................. 13

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
   970 F.3d 1269 (10th Cir. 2020) .................................................................................... 6, 12

*Flowers v. S. Reg'l Physician Servs., Inc.*,
   286 F.3d 798 (5th Cir. 2002) ............................................................................................... 9

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003*)* .............................................................................................. 10

*Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*,
   690 F.3d 382 (5th Cir. 2012*)* ................................................................................................ 9

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
   487 F.3d 928 (D.C. Cir. 2007*)* ............................................................................................ 10

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
   864 F.3d 172 (2d Cir. 2017*)* ...................................................................... 2, 5, 8, 10, 11, 12, 13

*Thai-Lao Lignite Co., Ltd. v. Gov't of the Lao People's Democratic Republic*,
   997 F. Supp. 2d 214 (S.D.N.Y. 2014*)*, *aff'd*, 864 F.3d 172 (2d Cir. 2017*))* ........................ 5, 11

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997*)* ................................................................................................. 10

**Treaties**

Convention on the Recognition and Enforcement of
   Foreign Arbitral Awards of June 10, 1958,
   21 U.S.T. 2517, T.I.A.S. No. 6997 ................................................................. 1, 2, 5, 8, 9, 10

**Rules and Regulations**

Fed. R. Civ. P. 60(b)(5) ................................................................................. 1, 2, 8, 9, 11, 12, 13

Fed. R. Civ. P. 60(b) ......................................................................................................... 2, 10, 11

**Treatises**

12 *Moore's Federal Practice - Civil*, § 60.46[1] (2020) ................................................................. 9

**Additional Authorities**

Restatement (Second) of Judgments § 16 ...................................................................................... 10

Pursuant to Federal Rule of Civil Procedure 60(b)(5), Respondents Grupo Cementos de Chihuahua, S.A.B. de C.V. ("GCC S.A.B.") and GCC Latinoamérica, S.A. de C.V. ("GCC Latinoamérica," and together "GCC") respectfully move to vacate this Court's March 26, 2019 entry of final judgment. This Court entered judgment to enforce a Bolivian arbitral award, but the Bolivian courts just issued decisions unequivocally vacating that arbitral award, and thus there is no longer any arbitral award to enforce and no basis for a judgment to enforce such an award.

## INTRODUCTION

On March 25, 2019, this Court granted Compañía de Inversiones Mercantiles, S.A.'s ("CIMSA") petition to confirm a Bolivian arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (the "New York Convention"). GCC had argued that this Court should decline to confirm the award in part because the award had "been set aside . . . by a competent authority of" Bolivia. *Id.*, art. V(1)(e). As this Court recognized, Bolivia had primary jurisdiction over the arbitration because GCC and CIMSA had agreed to arbitrate their commercial disputes in Bolivia and subject to Bolivian law. *See* Dkt. 93 at 14. This Court thus held that if a Bolivian "competent authority" were to set aside the arbitral award, that decision would receive "deference." *Id.* (quotation marks omitted). This Court, however, found that the arbitral award had not been set aside by a Bolivian court. *See id.* at 15-20. It recognized that there were still ongoing proceedings to set aside the award in Bolivia, but it decided to confirm the award because (*inter alia*) it was unclear when the Bolivian proceedings might be resolved. *See id.* at 25-33.

Less than a month ago, those proceedings were resolved, and the Bolivian courts have set aside the arbitral award. As this Court recognized, the Twelfth Judge of the Civil and Commercial Court issued an order annulling the arbitral award on October 9, 2015 (the "Damages Annulment Order"). *Id.* at 11. But this decision had been vacated in December 2016. *Id.* at 11-12. On

1

October 29, 2020, the Plurinational Constitutional Tribunal ("PCT"), Bolivia's "highest constitutional court," *id.* at 7, issued an order holding that the December 2016 decision that had set aside the Damages Annulment Order was a "product of a deceit or procedural fraud," and vacated that decision. Ex. B at 19. The Twelfth Judge accordingly reinstated the Damages Annulment Order. *See* Ex. D. The arbitral award has, as a result, now been set aside by a Bolivian court of competent authority in a final decision.

This Court should vacate its prior judgment under Federal Rule of Civil Procedure 60(b)(5) because the judgment "is based on an earlier judgment that has been reversed or vacated." *See Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 185 (2d Cir. 2017). Although Rule 60(b) motions are rare, courts "are generally, and correctly, solicitous of a movant seeking relief when a prior judgment on which the challenged judgment relies has been vacated." *Id.* at 186. This is especially so when, as here, a foreign arbitral award governed by the New York Convention has been set aside by the primary jurisdiction. *See id.* The Second Circuit affirmed vacatur under Rule 60(b) in virtually identical circumstances. *Id.* at 186-89. The principles underlying the New York Convention, international comity, and equity all require that this Court vacate its judgment, which rests entirely on an arbitral award that is now null and void. Accordingly, the Rule 60(b) motion should be granted.

## BACKGROUND

This confirmation and enforcement action arises from an April 10, 2015 arbitral award issued by an arbitral tribunal in La Paz, Bolivia ordering GCC to pay approximately $36 million to CIMSA (the "Damages Award"). Dkt. 93 at 5. Before issuing the Damages Award, the tribunal issued a September 13, 2013 "Merits Award" finding GCC liable for violating a contractual right of first refusal. *Id.* at 4. The Merits Award thus established liability, and the Damages Award set the damages. GCC challenged both the Merits and Damages Awards in Bolivian court. This

Court's order granting CIMSA's motion for confirmation focused on GCC's challenges to the Merits Award because its Damages Award challenges were still pending. This present motion, however, arises out of GCC's challenges to the Damages Award.

I.  **BOLIVIAN PROCEEDINGS PRIOR TO THIS COURT'S ENTRY OF JUDGMENT**

    A.  **GCC's Challenges To The Merits Award**

In February 2014, before the Damages Award had been issued, the arbitral tribunal granted GCC leave to request annulment—and GCC filed such a request for annulment—of the Merits Award in Bolivian court. *Id.* at 5-6. This request was initially denied by the Eighth Judge of the Commercial Court ("Eighth Judge Decision," No. 362/2015, Dkt. 65-4). *See id.* at 6. GCC sought review of that decision through an *amparo* proceeding. *See id.* 7. Bolivian *amparo* proceedings allow a party to seek review of official conduct, including judicial decisions in annulment proceedings, alleged to have violated a party's constitutional rights. *See id.* at 6-7. *Amparos* are initially heard by departmental courts, called "Guarantee Courts" when acting on *amparos*. *Id.* at 7.

On October 28, 2015, the Guarantee Court presiding over the *amparo* vacated the Eighth Judge Decision and directed it to issue a new decision with respect to the Merits Award's annulment (Guarantee Court Resolution No. 77/2015, Dkt. 65-6). *Id.* Whenever a Guarantee Court issues a decision on an *amparo*, that decision is both remanded to the lower court for immediate resolution and remitted to Bolivia's highest court in constitutional matters, the PCT, for review. Dkt. 65 ¶ 21. On remand, because the Eighth Judge was on vacation, the case was decided by the Ninth Judge of the Commercial Court. *Id.* ¶ 23.

The Ninth Judge issued an order annulling the Merits Award ("Ninth Judge Decision" No. 13/2016, Dkt. 65-12). Dkt. 93 at 7-8. CIMSA then filed its own *amparo* for relief from the Ninth

3

Judge Decision. *Id.* at 8. On February 22, 2016, the Guarantee Court granted CIMSA's *amparo* and directed that the case be remanded again (Guarantee Court Resolution No. 04/2016). *Id.*; Dkt. 65 ¶ 34.

At that point, the PCT issued two separate orders revoking the two Guarantee Court decisions. Dkt. 93 at 8-10. The first order (No. 0337/2016, Dkt. 65-14, "PCT Revocation Order") revoked the first Guarantee Court decision that had annulled the Eighth Judge Decision. *Id.* at 8-9. The second order (No. 581/2016, Dkt. 65-16, "PCT Procedural Order") revoked the second Guarantee Court decision. *Id.* at 9-10. In the Procedural Order, the PCT held that, given the constraints on review of lower courts, "it is not possible to examine the merits of the problem raised, much less set aside Ruling 13/2016 [*i.e.*, the Ninth Judge Decision]." Dkt. 65-16 at 10.

### B.  GCC's Challenges To The Damages Award

On September 24, 2015, after obtaining leave from the arbitral tribunal, GCC filed a request for annulment of the Damages Award in the Commercial Court. Dkt. 93 at 11; Dkt. 65 ¶ 52. On October 9, 2015, the Twelfth Judge of the Commercial Court issued an order annulling the Damages Award on the basis that the arbitral tribunal had impaired GCC's right to due process and right to a defense (Dkt. 65-36, "Damages Annulment Order"). Dkt. 93 at 11; Dkt. 65 ¶ 53.

CIMSA filed an *amparo* challenging the arbitral tribunal's granting of leave to request annulment of the Damages Award. Dkt. 93 at 11. This *amparo* was rejected by the Third Civil Chamber of the Departmental Court of Justice of La Paz, acting as Guarantee Court (Dkt. 65-38, "Third Civil Chamber Order"). *See id.* at 11-12. This first *amparo* did not, however, challenge the Damages Annulment Order. Dkt. 65 ¶¶ 55-56. So CIMSA filed a second *amparo* challenging the order annulling the Damages Award itself. *Id.* ¶ 57. This second *amparo* was rejected by the Second Civil Chamber of the Departmental Court of Justice of La Paz, acting as Guarantee Court ("Second Civil Chamber Order"). *Id.*

4

Both *amparos* were submitted to PCT review. *Id.* ¶¶ 58-59. On November 7, 2016, the First Chamber of the PCT issued decision No. 1127/2016-S1 (the "November 2016 PCT Order"), confirming the Third Civil Chamber Order, which had rejected CIMSA's first *amparo*. *Id.* ¶ 58. On December 16, 2016, the Third Chamber of the PCT issued decision No. 1481/2016-S3 (Dkt. 65-38, the "December 2016 PCT Order"), revoking the Second Civil Chamber Order, which had rejected CIMSA's second damages-related *amparo*. *Id.* ¶ 59. The PCT also ordered that the Twelfth Judge of the Commercial Court issue a new decision on the annulment of the Damages Award. *Id.*

## II.  THIS COURT'S CONFIRMATION OF THE ARBITRAL AWARD AND ENTRY OF JUDGMENT

On June 1, 2018, CIMSA moved for this Court to confirm the arbitral award under the New York Convention. Dkt. 50. GCC opposed confirmation, arguing in part that the Ninth Judge Decision "set aside" the arbitral award under Article V(1)(e) of the New York Convention. Dkt. 61 at 38-59. GCC also argued in the alternative that this Court should "stay the case until the Damages Award annulment proceedings have been definitively resolved." *Id.* at 60.

On March 25, 2019, this Court issued an order confirming the arbitral award. Dkt. 93. It recognized that "deference must generally be afforded" to a Bolivian court decision setting aside the award, unless the court decision was "'repugnant to fundamental notions of what is decent and just in the State where enforcement is sought' . . . or violated 'basic notions of justice.'" *Id.* at 14 (quoting *Thai-Lao Lignite Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 997 F. Supp. 2d 214, 223 (S.D.N.Y. 2014), *aff'd* 864 F.3d 172 (2d Cir. 2017)). But this Court ruled that the arbitral award had not been set aside by the Bolivian courts because the PCT's Revocation Order "rendered the Ninth Judge Decision null and void." *Id.* at 15. The Court declined to stay consideration of the case as well, in part because it predicted that it would "be difficult" for the

5

Bolivian courts to invalidate the Damages Award again in light of the December 2016 PCT Order, *id.* at 30, and because it was "anyone's guess as to when there would be a truly final resolution of the matter in the Bolivian courts," *id.* at 29.

This Court entered final judgment on March 26, 2019.  Dkt. 94.  On August 17, 2020, the Tenth Circuit affirmed.  *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1300 (10th Cir. 2020).

### III. BOLIVIAN PROCEEDINGS FOLLOWING THIS COURT'S ENTRY OF JUDGMENT

In May 2019, GCC filed two motions requesting that the Guarantee Court order the Commercial Court to enforce the original Damages Annulment Order.  Ex. B at 17.  The Guarantee Court denied both motions, and GCC appealed the second denial to the PCT.  *Id.*  On October 29, 2020, the Fourth Chamber of the PCT informed the parties that it had granted GCC's appeal (the "October 2020 PCT Order").  *Id.* at 23.[1]

The October 2020 PCT Order held that the Damages Annulment Order was still in effect.  It found that the December 2016 PCT Order (that had purported to vacate the Damages Annulment Order) "was product of a deceit or procedural fraud caused by [CIMSA]."  *Id.* at 19.  CIMSA had filed its second *amparo* knowing full well that its first *amparo* had failed, and its arguments in both *amparos* were "duplic[ative]."  *Id.*; *see also id.* at 12 ("[F]iling a new constitutional *amparo* proceeding with similar grounds and pursuing the same effect is not permitted, if a prior one is still pending resolution; this not only because it would imply the risk of incurring into a duplicity of judgments, with the probability of incurring into contradictory decisions, an unwanted legal situation, but fundamentally because acting in such way constitutes an abusive use of the

---

[1] The October 2020 PCT Order is dated February 18, 2020, but it issued and served its order on the parties on October 29, 2020, and thus GCC first learned of it at that time.  *Id.*

6

extraordinary constitutional defense mechanisms, unnecessarily activating the State's judicial system . . . ."). The second *amparo* thus resulted in contradictory decisions and "juridical chaos," and CIMSA erred in "failing to observe the implicit mandate of the first constitutional action." *Id.* at 19; *see also id.* at 12 ("In virtue of such understanding, it was not possible to file the second constitutional *amparo* proceeding, when the first one had not concluded yet; because it is understood that the second proceeding was product of a deceit caused by the petitioner, who repeatedly filed defense proceedings, abusing the Constitution's provisions.").

As a result, the decisions arising from CIMSA's second *amparo*—including the December 2016 PCT Order vacating the Damages Annulment Order—were invalid because they "ar[ose] from a fraudulent act caused by deceit to the constitutional justice" and thus "the second constitutional *amparo,* as a matter of fact, was not brought to juridical life." *Id.* at 18. The mandate from the PCT was therefore to "**order[]** the strict observance of the effect caused by the first constitutional *amparo* proceeding; therefore all the actions undertaken after the issuance of the [Third Civil Chamber Order, rejecting CIMSA's first *amparo*] are annulled and not subject to validation." *Id.* at 20.

On November 5, 2020, the Twelfth Judge of the Commercial Court received the October 2020 PCT Order and issued a final order confirming that its 2015 Damages Annulment Order "is valid" and remains binding (the "November 2020 Annulment Confirmation"). Ex. D at 2. The court accordingly ordered the arbitral tribunal "to issue a new arbitration damages award." *Id.*

### IV. CIMSA'S CONDUCT FOLLOWING THE OCTOBER 2020 PCT ORDER

Since receiving notice of the October 2020 PCT Order, CIMSA has raced to register this Court's judgment in as many jurisdictions as it could. On October 29, 2020—the same day both parties were notified of the October 2020 PCT Order—CIMSA petitioned the Southern District of New York to register the judgement. *See* No. 1:20-mc-00358. On November 16, the same day

7

GCC informed CIMSA it would file this motion to vacate, CIMSA registered the judgment in the District of Montana. *See* No. 1:20-mc-00011-TJC. Two days later, it registered the judgment in the Western District of Texas. *See* No. 1:20-mc-01143-UA.

## ARGUMENT

This Court should vacate the judgment under Rule 60(b)(5). Rule 60(b)(5) allows a court to "relieve a party . . . from a final judgment" when "the judgment . . . is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). In particular, "Rule 60(b)(5) applies to motions to vacate judgments confirming arbitral awards that are subsequently set aside in the primary jurisdiction." *Thai-Lao*, 864 F.3d at 185. Moreover, the New York Convention states that "[r]ecognition and enforcement of the award may be refused" where the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention, art. V(1)(e). Thus, because the Bolivian courts have set aside the Bolivian arbitral award in a final order, this Court should vacate its judgment to enforce that now-nullified award.

**I. A BOLIVIAN COURT OF COMPETENT AUTHORITY HAS SET ASIDE THE ARBITRAL AWARD**

This Court has already recognized that the Twelfth Judge Decision "annulled the Damages Award." Dkt. 93 at 11. It also recognized that the Guarantee Court rejected two of CIMSA's *amparos* challenging the Damages Award, and that the November 2016 PCT Order affirmed one of those orders. *Id.*; *see* Dkt. 65 ¶¶ 58-59. This Court, however, declined to give effect to the Twelfth Judge Decision because the December 2016 PCT Order "vacated" the Twelfth Judge Decision. Dkt. 93 at 12. CIMSA itself acknowledged when it sought confirmation that GCC's challenges to the Damages Award were still "pending." Dkt. 50 at 18.

8

But now the PCT has held unequivocally that the Twelfth Judge Decision, which set aside the Damages Award, is valid and binding. The October 2020 PCT order vacated the December 2016 PCT Order on account of what it deemed "deceit or procedural fraud caused by [CIMSA]." Ex. B at 19. And the mandate of the PCT is now perfectly clear: there must be "strict observance of the effect caused by the first constitutional *amparo* proceeding." *Id.* at 20. As a result, the Twelfth Judge has now reinstated its Damages Annulment Order. *See* Ex. D. There has never been any dispute in this case that the PCT has lawful authority to act in this case. CIMSA itself repeatedly relied on the December 2016 PCT Order when explaining why this Court should disregard the Damages Annulment Order. *See* Dkt. 50 at 14-15 & n.23, 17; Dkt. 73 at 36 ("The Damages Award Has Not Been Set Aside"). Nor has there been any dispute that the Twelfth Judge is a competent authority for purposes of the New York Convention. Accordingly, the Damages Award has been "has been set aside or suspended by a competent authority of" Bolivia, "the country in which, [and] under the law of which, that award was made." New York Convention, art. V(1)(e).

In short, the predicate for this Court's final judgment no longer exists. The Damages Award was the "necessary element" of this Court's confirmation decision, and so Rule 60(b)(5) vacatur is warranted. *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 386 (5th Cir. 2012) (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 801 (5th Cir. 2002)); *see also, e.g.*, 12 *Moore's Federal Practice - Civil* § 60.46[1] (2020) ("[O]ne judgment is an earlier judgment for purposes of Rule 60(b)(5) if it is a logical premise of the other judgment." (quotation marks omitted)).

## II. THIS COURT SHOULD VACATE ITS JUDGMENT, WHICH WAS PREDICATED ON AN ARBITRAL AWARD THAT IS NOW NULL AND VOID

The Bolivian courts' decisions setting aside the Damages Award warrant vacatur of this Court's judgment under Rule 60(b). While most Rule 60(b) relief is rare, "[c]ourts . . . are generally, and correctly, solicitous of a movant seeking relief when a prior judgment on which the challenged judgment relies has been vacated." *Thai-Lao*, 864 F.3d at 186 (collecting authorities); *cf.* Restatement (Second) of Judgments § 16 cmt. c (1982) (explaining that a "court should []  normally set aside [a] later judgment" that is "based and dependent upon an earlier judgment which subsequently is nullified"). Simply put, once an arbitration award has been set aside, "an arbitration award does not exist to be enforced." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 936 (D.C. Cir. 2007).

The need for vacatur under Rule 60(b) is especially clear where, as here, a foreign arbitral award governed by the New York Convention has been set aside by a competent authority of the rendering state. *See Thai-Lao*, 864 F.3d at 186. "In adjudicating such a motion, district courts should consider the point that 'under the Convention, the power and authority of the local courts of the primary jurisdiction remain of paramount importance.'" *Id.* (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d Cir. 1997)) (brackets omitted). Indeed, "the country in which, or under the arbitration law of which, an award was made is said to have primary jurisdiction over the arbitration award." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003) (brackets and quotation marks omitted). "[T]he Convention does not restrict the grounds on which primary-jurisdiction courts may annul an award, thereby leaving to a primary jurisdiction's local law the decision whether to set aside an award." *Id.* at 368. The primary jurisdiction thus retains general "supervisory authority over an arbitral award." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 22.

10

For these reasons, as the Second Circuit explained, the general rule is that a Rule 60(b) motion should be granted where a foreign arbitral award has been set aside. "The annulment of an arbitral award in the primary jurisdiction should . . . be given significant weight." *Thai-Lao*, 864 F.3d at 186. "[T]he party opposing vacatur of a judgment enforcing a later-annulled award may show in support of its opposition that giving effect to the judgment annulling the award would offend fundamental notions of what is decent and just in the United States." *Id.* (quotation marks omitted). "In the absence of such a public policy concern, however, the annulment of an award in the primary jurisdiction should weigh heavily in a district court's Rule 60(b)(5) analysis." *Id.* This Court has recognized essentially the same point: "[D]eference must generally be afforded to the decision of a competent authority in the primary jurisdiction," with "a narrow exception" where such deference would be "'repugnant to fundamental notions of what is decent and just.'" Dkt. 93 at 14 (quoting *Thai-Lao*, 997 F. Supp. 2d at 223).

In applying the "the high standard for overcoming the presumptive effect of a primary jurisdiction's annulment," courts may "consider whether the motion was made within a reasonable time, whether the movant acted equitably, and whether vacatur would strike an appropriate balance between serving the ends of justice and preserving the finality of judgments, as well as the prudential concern for international comity." *Thai-Lao*, 864 F.3d at 186. Here, all of the factors support vacatur and certainly none outweighs the strong deference that must be afforded to the Bolivian courts' decisions setting aside the arbitral award, such that U.S. courts would enforce a Bolivian arbitral award that is null and void under Bolivian law. Indeed, the Second Circuit affirmed vacatur in materially identical circumstances. *See id.* at 186-89.

*First*, there is no question that this motion has been made within a reasonable time. Just as in *Thai-Lao*, GCC "sought relief promptly" after the foreign courts set aside the arbitral award. *Id.*

11

at 188.  The Twelfth Judge reinstated the Damages Annulment Order on November 5, 2020 (Ex. D), and GCC submitted this motion just fifteen days after that decision.  *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-CV-2516-WJM-KLM, 2017 WL 345664, at *1 (D. Colo. Jan. 24, 2017) (noting that a "time lag of less than a month" was "not unreasonable" under Rule 60(b)(5)) (quoting *Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 553 (2d Cir. 1995)).

*Second*, the equities also favor vacating the judgment here.  Just as in *Thai-Lao*, CIMSA and this Court "knew proceedings to set aside the Award . . . were ongoing before the District Court entered judgment."  864 F.3d at 189.  GCC sought a stay in this Court precisely for this reason.  CIMSA's choice to proceed here despite the ongoing Bolivian proceedings should not allow CIMSA to evade the judgments of the Bolivian courts.  Moreover, GCC acted equitably in this litigation, as the Tenth Circuit recognized that (even before the Bolivian court decisions at issue in this motion), the case presented close questions on jurisdiction and on the merits.  *See Compañía de Inversiones Mercantiles*, 970 F.3d at 1287 (describing the personal jurisdiction issue as "a close question"); *id.* at 1297 (acknowledging "there *is* no perfect explanation" of whether the Merits Award had been set aside).  By contrast, CIMSA has acted inequitably by registering this Court's judgment as soon as it learned of the October 2020 PCT order.  *See infra* at 7-8.  Indeed, the equitable considerations are substantially stronger here than in *Thai-Lao*, where the respondent sought review in the foreign court only after the deadline had elapsed and after the enforcement proceeding had begun, and the respondent was untimely in complying with the district court's discovery orders.  *See* 864 F.3d at 175, 187-88.  Yet even this was insufficient to disregard the foreign judgment.  *See id.* at 188 ("To find otherwise, as Laos points out, and to rule that the conduct entirely precluded the requested vacatur under Rule 60(b)(5), would mean in effect

12

directing the District Court to enter the equivalent of a $57 million sanction against Laos for its misconduct—a steep fine indeed . . . .").

Another critical point on the equities is that vacating the judgment will *not* deprive CIMSA of its right to enforce an arbitral award. The Twelfth Judge has ordered a new arbitration on damages. Ex. D at 2. When the new proceedings are concluded and final, CIMSA can seek to enforce the new judgment. It would be contrary to the fundamental principles underlying the New York Convention and international comity to enforce an arbitral award while the arbitration panel is reconsidering the proper amount of that award.

*Third*, there is no countervailing "interest in finality" that outweighs the usual rule. *Thai-Lao*, 864 F.3d at 188. Almost no time elapsed between the 2015 Damages Award and the 2015 Damages Annulment Order. And the Tenth Circuit's mandate affirming this Court's judgment was issued only six weeks ago. *See* Dkt. 157. Thus, any effect on finality is *de minimis* here.

*Finally*, international comity strongly supports vacatur here. There is no hint that the Twelfth Judge Decision annulling the Damages Award is "repugnant to fundamental notions of what is decent and just." Dkt. 93 at 14 (quotation marks omitted). Although CIMSA argued in its original papers that the Ninth Judge Decision was "tainted" and should not be recognized (Dkt. 73 at 50-62), it raised no objections or concerns about the Twelfth Judge Decision. Nor did it question the two Guarantee Court decisions rejecting *amparos* against that decision or the November 2016 PCT Order affirming the first *amparo*. There is, as a result, "no adequate reason for refusing to recognize the" the Twelfth Judge Decision and the October 2020 PCT Order reinstating it. *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 197 (2d Cir. 1999).

## CONCLUSION

This Court should vacate its March 26, 2019 judgment pursuant to Rule 60(b)(5).

13

Dated: November 20, 2020

                                              Respectfully submitted,

| | |
|---|---|
| Daniel Pulecio-Boek | */s/ David M. Cooper* |
| GREENBERG TRAURIG LLP | David M. Cooper |
| 2101 L Street, N.W. | QUINN EMANUEL URQUHART |
| Suite 1000 |   & SULLIVAN, LLP |
| Washington, DC 20037 | 51 Madison Ave., 22nd Floor |
| (202) 331-3117 | New York, NY 10010 |
| | (212) 849-7000 |
| | |
| | Juan P. Morillo |
| | QUINN EMANUEL URQUHART |
| |   & SULLIVAN LLP |
| | 1300 I Street NW, Suite 900 |
| | Washington, DC 20005 |
| | (202) 538-8000 |

*Counsel for Respondents-Judgment Debtors*

14

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1A

Counsel for Respondents conferred in good faith with counsel for CIMSA on November 16.  CIMSA stated that it would oppose this motion.

| | |
|---|---|
| Daniel Pulecio-Boek<br>GREENBERG TRAURIG LLP<br>2101 L Street, N.W.<br>Suite 1000<br>Washington, DC 20037<br>202-331-3117 | */s/ David M. Cooper*<br>David M. Cooper<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>51 Madison Ave., 22nd Floor<br>New York, NY 10010<br>212-849-7000<br><br>Juan P. Morillo<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN LLP<br>1300 I Street NW, Suite 900<br>Washington, DC 20005<br>202-538-8000 |

*Counsel for Respondents-Judgment Debtors*

15